UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 1:14-cv-23219-PAS

ORLANDO A ARTOLA and all other
similarly situated under 29 U.S.C. 216(B),

    Plaintiff,

v.

MRC EXPRESS, INC. and ALPHA
LOGISTICS SERVICE, INC.,

    Defendants.
_____/

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Defendants, MRC EXPRESS, INC. ("MRC") and ALPHA LOGISTICS SERVICE, INC. ("ALS",) by and through undersigned counsel, hereby file their Motion for Summary Judgment and state as follows:

### SUMMARY OF ARGUMENT

Defendants are entitled to summary judgment in their favor and against the Plaintiff in this Fair Labor Standards Act of 1938 ("FLSA") lawsuit as a matter of law in this action because, based on the evidence, even when viewed in the light most favorable to Plaintiff, the economic realities of the parties' relationship shows that Plaintiff was an independent contractor and not an employee entitled to FLSA protection as to Plaintiff's overtime claim.

Further, from February 2014 until August 2014, Plaintiff's entity provided services to MRC – not the Plaintiff.

Finally, ALS, as an entity by name only, which has not conducted any business since its creation also was not Plaintiff's employer.

1

## STATEMENT OF MATERIAL UNDISPUTED FACTS

Pursuant to S.D. Fla. L.R. 56.1(a), Defendants are simultaneously herewith filing a separate Statement of Material Undisputed Facts ("SMUF") in support of this motion, which is incorporated herein by reference.

## LEGAL ARGUMENT

### Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See, *Fed. R. Civ. P. 56(c)*. The moving party bears the burden of demonstrating the lack of any material dispute, after which the nonmoving party must show the existence of a genuine issue for trial if it is to avoid summary judgment. See, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, (1986). Despite the presumptions in favor of the non-moving party, the court must be mindful of the purpose of Rule 56 which is to eliminate the needless delay and expense to the parties and to the court occasioned by an unnecessary trial. See, *Fuentes v. CAI Int'l, Inc.*, 728 F. Supp. 2d 1347 (S.D. Fla. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986)). Consequently, the non-moving party cannot merely rest upon his bare assertions, conclusory allegations, surmises or conjectures. *Id*. The non-moving party is required to "go beyond the pleadings" and present competent evidence designating "'specific facts showing that there is a genuine issue for trial.'" See, *Celotex Corp.* Id. at 324. "The mere existence of a scintilla of evidence in support of the position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." See, *Johnson v. Bd. of Regents*, 263 F.3d 1234 (11th Cir. Ga. 2001). The mere existence of some alleged factual dispute between the

parties will not defeat an otherwise properly supported motion for summary judgment -- there must be no genuine issue of material fact. See, *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). An issue is not genuine if it is unsupported by the evidence or created by evidence that is "merely colorable" or not "significantly probative." *Id*. at 249-50. Similarly, a fact is considered material only if it is identified by the substantive law as an essential element of the non-moving party's case. *Id*. at 248. "[U]nless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party, "summary judgment shall be rendered. *Id*. at 249. Stated differently, "[w]here the record taken as a while could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." See, *Matsushita*, Id. at 587.

Finally, "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." See, *Baca v. Fla. Roofing Solutions, Inc.*, 2013 U.S. Dist. LEXIS 38563 (S.D. Fla. Mar. 20, 2013) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Carson v. J Curt Inc.*, 1:06-CV-00098-MP-AK, 2007 U.S. Dist. LEXIS 11903, 2007 WL 601925, at *2 (N.D. Fla. Feb. 21, 2007) (finding that, where the defendant has produced time records, plaintiff could not rely only on his own uncorroborated testimony to defeat a motion for summary judgment)).

    **I.**    **As an Independent Contractor of MRC's, Plaintiff Was Not Entitled to FLSA Protection and Relief.**

"The requirements of the FLSA apply only to employees. The statute defines an 'employee' as 'any individual employed by an employer.' The requirements of the FLSA apply only to employees. The statute defines an 'employee' as 'any individual employed by an employer.'" See, *Freund v. Hi-Tech Satellite, Inc.,* 185 Fed. Appx. 782, 782 (11th Cir. 2006)

(citing 29 U.S.C.S. §203(e)(1)). "The FLSA defines 'to employ' as to suffer or permit to work." *Id*. (citing 29 U.S.C.S. §203(g)). Finally, 'an employer' is "any person acting . . . in the interest of an employer in relation to an employee." *Id*. (citing 29 U.S.C.S. §203(d)). "The Supreme Court has explained that courts must determine whether, as a matter of 'economic realit[y],' an individual is an employee or an independent contractor in business for himself." *Id*. (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728 (1947)). That is because, "[T]he FLSA applies to employees but does not apply to independent contractors." See, *Altman v. Sterling Caterers, Inc.*, 879 F. Supp. 2d 1375, 1379 (S.D. Fla. 2012) (citing *Rodilla v. TFC–RB, LLC*, No. 08–21352, 2009 U.S. Dist. LEXIS 104157, 2009 WL 3720892, at *15 (S.D. Fla. Nov. 4, 2009)).

Here, the undisputed facts demonstrate that, under the "economic realities" test, Plaintiff was an independent contractor and not an employee of MRC's, in that he worked primarily for himself and conducted himself accordingly. In *Freund*, the Eleventh Circuit explained that test as follows:

> The Supreme Court has explained that courts must determine whether, as a matter of "economic realit[y]," an individual is an employee or an independent contractor in business for himself. *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728 (1947). Several factors guide this inquiry:
>
> (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;
>
> (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
>
> (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;
>
> (4) whether the service rendered requires a special skill;
>
> (5) the degree of permanency and duration of the working relationship;
>
> (6) the extent to which the service rendered is an integral part of the alleged employer's business.

*Secretary of Labor v. Lauritzen*, 835 F.2d 1529, 1535 (7th Cir.1987). "No one of these considerations can become the final determinant, nor can the collective answers to all of the inquiries produce a resolution which submerges consideration of the dominant factor-economic dependence." *Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1311 (5th Cir.1976). The determination of employment status is a question of law, which we review de novo. *Antenor v. D & S Farms*, 88 F.3d 925, 929 (11th Cir.1996).

See, *Freund*, 185 F. App'x at 783.

### a. The Nature and Degree of the Alleged Employer's Control

MRC had no control over Plaintiff's work as a delivery driver.

Plaintiff never worked on MRC's worksite – in fact, he had no reason to be at MRC's Pompano Beach or Orlando warehouses because he arrived daily to HD Smith's facility, delivered packages given to him in a manifest from HD Smith, and returned home after his last delivery. Thus, as a starting point, MRC was not in position to "prevent labor law violations" to the extent any existed. See, *Layton v. DHL Express (USA), Inc.*, 686 F.3d 1172, 1180 (11th Cir. Ala. 2012) ("[a] business that owns or controls the worksite will likely be able to prevent labor law violations..."). The inquiry, however, does not end here.

Plaintiff was not provided with an hourly schedule in which to perform the delivery services. Instead, he was instructed to show up at the HD Smith facility after 6:00 a.m., because that is when that facility opened. As such, he was free to arrive later without any repercussions. Further, Plaintiff was not provided with any handbook or manual on how to perform his job. Plaintiff was free to make stops whenever he desired during the day and MRC did not monitor his whereabouts because they did not equip him with a GPS system. Plaintiff was not in contact with MRC during the day. Thus, MRC was not in control or knowledge of the actual work time for Plaintiff. Neither MRC, nor Plaintiff cared about his work time because he was paid by the

5

volume of stops, and not by the time it took him to make those stops. In other words, if it took him three hours or one hour to make five deliveries, Plaintiff would be paid the same amount.

Realizing the potential for profit in his loose relationship with MRC, Plaintiff used his wife to help him make deliveries. Plaintiff controlled which stops his wife would make and when.  He paid her to do so. In doing so, Plaintiff controlled how many or few hours *he* actually worked and there was no one there to monitor the hours other than Plaintiff himself. Plaintiff did not even record or report to MRC which deliveries he made and which deliveries his wife made. Such was the lack of control by MRC over Plaintiff's work, as even the Plaintiff understood them to be.

The only tidbit of fact Plaintiff will argue in his favor is the fact that he was required to wear a shirt with an "Alpha Logistics" emblem embroidered on it and he carried an ID that stated "Alpha Logistics" on it. Those facts are insufficient to show the MRC controlled Plaintiff. See, e.g., *Parrilla v. Allcom Constr. & Installation Servs., LLC*, 2009 U.S. Dist. LEXIS 77585, *7 (M.D. Fla. Aug. 31, 2009) ("Defendant also required Plaintiff to wear a shirt and badge with Defendant's and Bright House's logos and required him to affix a magnetic sign with similar logos on his vehicle. Unlike the other limitations and controls that Defendant exerted over Plaintiff, these requirements are not significant and appear to be common in the industry.")

    b. **The Alleged Employee's Opportunity for Profit or Loss**

During his relationship with MRC, Plaintiff was the one with all the opportunity and all the risk for profit or loss. He regularly exercised his opportunities. The clear evidence presented demonstrates that Plaintiff had significant investment in his delivery business (individually, and through U-Trust Delivery Corp.)

The relevant inquiry under this factor is whether Mr. Artola "faced a real opportunity for either a profit or loss in [his] operations, depending upon the amount of [his] investment and [his] skills in management." See, *Krupicki v. Eagle One, Inc.*, 2014 U.S. Dist. LEXIS 46038, *18 (E.D. Ark. Apr. 3, 2014) (citing *Donovan v. DialAmerica Mktg., Inc.,* 757 F.2d 1376, 1387 (3d Cir. 1985)).

Here, as shown in detail in the discussion of the next factor, and as shown in Schedule C's of Plaintiff's tax returns for the relevant years (***Exhibits H, I, J, and K***), Mr. Artola invested a significant amount of money in the operation of his delivery business. This presented a large degree of risk of loss to Mr. Artola. He managed that risk by exercising discretion over these large amount of expenses of his business. By example, he switching between cellular providers he used for his business, based on the cost, and later, deducted that cost as a business expense. ***Plaintiff's Depo. – Exhibit D,*** 109:22 – 110:9

Additionally, Plaintiff regularly exercised his managerial abilities and decision-making process in increasing his revenue. MRC did not pay Plaintiff by the hour. MRC paid Plaintiff an agreed amount per stop. Plaintiff controlled how many stops he made every day and every week. He could accept or reject stops before leaving HD Smith's facility. He could decide whether to show up to HD Smith's facility on any given day or not. Plaintiff was not subject to discipline based on the time he showed up.

In an attempt to increase his volume of stops, Plaintiff even used the help of his wife to deliver 15-20 stops per week. Plaintiff paid her $9.00 per stop to do so, which is 50 cents less than he received. As Ms. Artola testified, Plaintiff used her help in order to increase his output. Thus, his managerial skill in planning and delegating stops to others, allowed Plaintiff to generate a larger amount of revenue from the Defendant. In other words, "[B]y accepting more

jobs, performing more efficiently and hiring employees, Plaintiff could earn greater sums of money." See, *Freund*, 185 F. App'x at 783.

This control over his opportunity for profit and loss is also apparent in Plaintiff's varying revenue, year to year. See, *Krupicki,* Id. at *19 ("Mr. Krupicki's opportunity for profit or loss is further illustrated by the fact that his annual revenues varied from year to year.")

In addition to not paying Plaintiff by the hour, MRC also did not control the amount of packages available for Plaintiff each day. H.D. Smith packaged the drugs to be shipped to each of *its* customers, based on *its* customers' orders. It provided the manifest of deliveries to Plaintiff. MRC was entirely outside that loop and could not exercise any control over Plaintiff's opportunity for profit. Plaintiff even submitted his completed manifest the following day to HD Smith, which, in turn, forwarded it to MRC for payment (MRC received payment from HD Smith based on the amount of stops the drivers it provided had, and paid Plaintiff based on the amount of stops he had).

### c. The Alleged Employee's Investment in Equipment or Materials

During his relationship with MRC Express, Inc., Plaintiff had all the expenses related to his delivery business and MRC Express, Inc. had none.

Specifically, Plaintiff was responsible for, and obtained a commercial vehicle for the sole purpose of delivering packages. He drove a commercial van (2005 Dodge Sprinter), which he did not make personal use of. He still uses that vehicle today, delivering packages to others.

Plaintiff was responsible for payment of all maintenance expenses, gasoline expenses, licenses, insurances, and other equipment as he needed. In fact, Plaintiff's expenses were so high that they covered 87% of his revenue in 2011 ($45,223/$51,624), 77% of his revenue in 2012 ($39,857/$51,664), 80% of his revenue in 2013 ($48,817/$60,321), and 80% of his revenue in

2014 ($37,082/$46,317). Of course, as a savvy business owner, Plaintiff also claimed all these expenses in his tax returns by stating that he owned a delivery business and worked for himself and reporting them on a Schedule C "Profit or Loss *from Business*" (emphasis added) – reducing his taxable income by nearly $171,000 during those years. Additionally, Plaintiff paid his wife for the work she performed.

Conversely, MRC Express, Inc. had absolutely zero expenses or investments related to Plaintiff's activities as a driver.

### d. Whether the Service Rendered Requires Special Skill

Little skill is required to drive a delivery truck. However, Plaintiff exhibited significant managerial skills in operating his delivery business, in the use of help – increasing profits, the reduction of costs and tax planning – reducing the operational costs of his delivery business.

### e. The Degree of Permanency and Duration of the Relationship

There was no permanency to Plaintiff's relationship with Defendants. The Contractor Purchased Transportation Agreement ("The Agreement") gave Plaintiff the right to terminate the contract "at any time, without any reason given by either party." See, *Exhibit E ¶3*. Further, The Agreement did not contain a non-compete clause. Nothing prevented Plaintiff from working for MRC's competition, during or subsequent to his association with MRC, if he desired to do so. In fact, he has worked for a competitor since his association with MRC terminated. That Plaintiff provided services to MRC as long as he did is a testament to the opportunity the relationship presented (as also seen through the benefits he derived in his yearly taxes) more than a designed permanency.

### f. The Extent to Which the Service Rendered is an Integral Part of the Alleged Employer's Business

The services Plaintiff himself rendered were marginally integral, at best, to MRC's business. First, MRC's revenue was not generated solely from its delivery services. A significant stream of revenue involved storage revenue that had nothing to do with the services provided by Plaintiff. **Brioso Depo. – Exhibit B,** 21:24 – 22:11; **Bethencourt Depo. – Exhibit A,** 62:17 – 63:3

Second, Plaintiff's role was entirely interchangeable. He was one of several other drivers servicing HD Smith. If he was not available or did not want to pick up a particular stop, other drivers could fill in. See, *Velu v. Velocity Express, Inc.*, 666 F.Supp.2d 300, 307 (E.D.N.Y. 2009) ("while plaintiff's work is integral to defendants' business, 'his work is interchangeable with other drivers; when he refuses work, other drivers fill in.'"); *Browning v. CEVA Freight, LLC*, 885 F.Supp.2d 590, 610 (E.D.N.Y. 2012) (noting that while plaintiff drivers were integral to Defendants' business, they were easily replaceable, and thus only 'weighs slightly' in favor of finding employment).

Finally, the drivers' services' value to MRC were significant only if viewed as a *group*. When viewed individually, *Plaintiff*'s services were marginal. Not only was he one of a large number of drivers MRC contracted with, he was one of 7-8 drivers that delivered out of the HD Smith facility. As such, it cannot be said that his services were an integral part of MRC's business. See, *Murray v. Playmaker Servs.*, LLC, 512 F. Supp. 2d 1273, 1279 (S.D. Fla. 2007).

In sum, all of the factors of the economic reality test point to the fact that Plaintiff was an independent contractor. This conclusion is, of course, consistent with the parties' intent in entering into The Contractor Purchased Transportation Agreement and Plaintiff's later formation of his own company to receive payments from MRC. It is also consistent with MRC's own

practices and records, and the testimony of other MRC employees, all of which refute Plaintiff's contention that he was ever an employee of MRC. Thus, Plaintiff cannot recover under the FLSA.

### II. Beginning February 2014, U-Trust Delivery Corp. Provided Services to MRC, Not the Plaintiff.

As the documents show, Plaintiff incorporated his own entity, U-Trust Delivery Corp. in February, 2014. In addition, on February 10, 2014, Plaintiff also provided an IRS W9 form to MRC in which he listed U-Trust Delivery Corp. as the payee for services. The services Plaintiff provided to MRC were provided through U-Trust Delivery Corp. Starting March 19, 2015, MRC made all payments directly to U-Trust Delivery Corp., and not to Plaintiff.

U-Trust Delivery Corp. filed its own taxes and had its own bank account, separate from Plaintiff's. Plaintiff paid himself and his wife for services they provided to U-Trust Delivery Corp. During that time period, U-Trust Delivery Corp. also received revenue from other sources. Plaintiff continues to own and operate U-Trust Delivery Corp. and provides delivery services through that entity even at present.

Under those circumstances, the Court should find as a matter of law, that U-Trust Delivery Corp. provided services to MRC, and not Plaintiff, beginning in February 2014, and that Plaintiff provided services to U-Trust Delivery Corp. and not to MRC since February, 2014.

As such, Plaintiff would not be entitled to FLSA protection for that time period because could not have been an "employee" of MRC's and neither could his entity be.

### III. ALS Was Never Plaintiff's Employer

While delivering pharmaceutical products from HD Smith to the local pharmacies, Plaintiff was never associated with Defendant, Alpha Logistics Service, Inc. Plaintiff stated

several times that he worked for "Alpha Logistics Service," but has failed to demonstrate that he worked for "Alpha Logistics Service, Inc." which is a separate entity from MRC Express, Inc.

MRC Express, Inc. has owned the fictitious name of "Alpha Logistics Service" since 2004 and has conducted its business utilizing that fictitious name. The evidence presented shows that Plaintiff was always paid by MRC Express, Inc. and has contracted with MRC Express, Inc.

Conversely, the evidence presented also shows that Alpha Logistics Service, Inc. has never paid Plaintiff, has never conducted any business, has never had any employee, has never had any revenue, has never had any bank account, and has existed only so that no one other than MRC Express, Inc. could incorporate using the name "Alpha Logistics Service."

Under those circumstances, Alpha Logistics Service, Inc. could not have been Plaintiff's employer because it has never suffered or permitted Plaintiff's work, nor has it acted in the interest of an employer in relation to the Plaintiff.

## CONCLUSION

For the above-stated reasons, Defendants respectfully request that this Court enter an Order granting their Motion for Summary Judgment as to Plaintiff's overtime claim and as to Plaintiff's retaliation claim and any such other relief as the Court deems just and proper.

## REQUEST FOR HEARING

Pursuant to L.R. 7.1(b), Defendants hereby request a hearing on their Motion for Summary Judgment. A hearing on the Motion would provide an opportunity for both Parties to present fully their respective positions and the facts on the complex issue presented by this Motion and the relief requested by the Defendant, including the "independent contractor/employee" issue. Defendants estimate that one (1) hour will be needed for oral argument for both Parties.

Respectfully submitted, this 13th day of July, 2015.

> LUBELL & ROSEN, LLC
> *Attorneys for Defendants*
> 200 S. Andrews Ave, Suite 900
> Ft. Lauderdale, Florida 33301
> Phone: (954) 880-9500
> Fax: (954) 755-2993
> E-mail: adi@lubellrosen.com
>
>
> By: *s/Adi Amit*
>   Adi Amit, Esquire
>   Florida Bar No. 35257

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 13, 2015, I electronically filed the foregoing document with the clerk of the court using CM/ECF. I also certify that the foregoing document is being served this day to all persons on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

> By:  /s *Adi Amit*
>   Adi Amit, Esquire
>   Florida Bar No: 35257

## SERVICE LIST

*Orlando Artola v. MRC Express, Inc., et al.*
S.D. Fla. Case No. 1:14-cv-23219-PAS

Rivkah Jaff, Esq.
K. David Kelly, Esquire
Alan R. Stone, Esq.
J.H. Zidell, Esq.
J.H. ZIDELL, P.A.
300 71st Street, Suite 605
Miami Beach, Florida 33141
Rivkah.Jaff@gmail.com
david.kelly38@rocketmail.com
esq1980@bellsouth.net
ZABOGADO@AOL.COM
*Counsel for Plaintiff*

Adi Amit, Esquire
LUBELL & ROSEN, LLC
200 S. Andrews Ave.
Suite 900
Ft. Lauderdale, Florida 33301
adi@lubellrosen.com
*Counsel for Defendants*